**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| EUGENE BATEN; CHESTER WILLIS; CHARLETTE PLUMMER–WOOLEY; BAKARI SELLERS; CORY C. ALPERT; and BENJAMIN HORNE, | Civil Action No.: 2:18-cv-00510-PMD |
| **Plaintiffs,** | |
| v. | |
| HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina; MARK HAMMOND, in his official capacity as Secretary of State of the State of South Carolina; the SOUTH CAROLINA ELECTION COMMISSION; BILLY WAY Jr., in his official capacity as a Chair of the Election Commission; MARK BENSON, in his official capacity as a Commission Member of the Election Commission; MARILYN BOWER, in her official capacity as a Commission Member of the Election Commission; E. ALLEN DAWSON, in his official capacity as a Commission Member of the Election Commission; NICOLE SPAIN WHITE, in her official capacity as a Commission Member of the Election Commission, | **GOVERNOR MCMASTER'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| **Defendants.** | |

**COMES NOW** Defendant Henry McMaster, in his official capacity as Governor of the State of South Carolina ("Governor McMaster"), by and through the undersigned counsel, and hereby submits this Memorandum in Support of the Motion to Dismiss filed contemporaneously herewith. Plaintiffs Eugene Baten, Chester Willis, Charlette Plummer–Wooley, Bakari Sellers, Cory C. Alpert, and Benjamin Horne (collectively, "Plaintiffs") filed the instant action challenging the manner in which South Carolina—like forty-seven other states and the District of

Columbia—appoints presidential electors on a "winner-take-all" basis.  Although the crux of Plaintiffs' arguments was raised and rejected at the Constitutional Convention, Plaintiffs now seek judicial intervention, asserting that South Carolina's use of the majority approach—which has been utilized by states since the first presidential election—violates the First and Fourteenth Amendments to the Constitution, as well as Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.  For the reasons outlined herein, Plaintiffs have failed to plead plausible claims for relief against Governor McMaster.  Accordingly, Plaintiffs' Complaint (ECF No. 1) should be dismissed, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

By way of the present action, Plaintiffs challenge what they acknowledge is "[t]he predominant method in America for counting votes in presidential elections."  (Compl. ¶ 1.) Nevertheless, Plaintiffs are seeking declaratory and mandatory, prospective injunctive relief aimed at ending South Carolina's practice of selecting presidential electors on a "winner-take-all" basis, "whereby the political party of the leading candidate among South Carolina's voters selects every Elector."  (Compl. ¶ 2.)  According to Plaintiffs, this approach renders meaningless the vote of every South Carolinian who does not vote for the prevailing candidate, which they suggest has a disproportionate impact on Democrats and African-American voters.  (Compl. ¶¶ 3, 5, 19.)

Yet, Plaintiffs conflate political affiliation with racial identification and equate dissatisfied voters with disenfranchised citizens.  In doing so, Plaintiffs fail to recognize that their overtly partisan positions are foreclosed not only by two centuries of electoral practice but also by over a century of judicial decisions.  *See, e.g.*, *Conant v. Brown*, 248 F. Supp. 3d 1014, 1024 (D. Or. 2017) ("Plaintiff's arguments are foreclosed by Supreme Court precedent.");

*Schweikert v. Herring*, No. 3:16-CV-00072, 2016 WL 7046845, at *2 (W.D. Va. Dec. 2, 2016) ("Plaintiff asks the Court to upend over two centuries of electoral practice and declare that Virginia's winner-take-all method for selecting electors violates the First Amendment, Fourteenth Amendment, Twelfth Amendment, Seventeenth Amendment, and the Section 2 of the Voting Rights Act of 1965."). At bottom, Plaintiffs' arguments are neither novel nor plausible, and courts across the country have repeatedly recognized as much in dismissing similar challenges by disgruntled voters. Governor McMaster respectfully submits that this Court should likewise reject Plaintiffs' claims and dismiss their Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiffs filed the present action in this Court on February 21, 2018. Plaintiffs' Complaint asserts three different causes of action against one or more of the above-referenced individuals, each in their official capacities, or entities. (Compl. 1, ¶¶ 29–36.) Plaintiffs' Complaint first alleges that South Carolina's manner of appointing presidential electors, in accordance with section 7-19-70 of the South Carolina Code of Laws, as amended, violates the "one-person, one-vote" principle of the Fourteenth Amendment because the "system for selecting Electors results in the votes of citizens who voted for a losing candidate in the state not being counted in the final direct election for President." (Compl. ¶ 112.) Plaintiffs' second cause of action argues that the predominant method of selecting presidential electors violates the First and Fourteenth Amendments because it "poses a severe burden on Plaintiffs' rights to associate and to effectively express their political preference through voting." (Compl. ¶ 115.) Plaintiffs' third cause of action alleges, *inter alia*, that South Carolina's system of appointing electors "results in the denial or abridgement of the right of African-American citizens in South

Carolina to vote on account of race or color in violation of Section 2 of the Voting Rights Act." (Compl. ¶ 118.)  In addition to attorney's fees, expenses, and costs, Plaintiffs are also seeking certain declaratory and mandatory, prospective injunctive relief.  (Compl. ¶¶ 122–23.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court "articulated a 'two-pronged approach' to assessing the sufficiency of a complaint."  *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  First, the complaint must "contain factual allegations in addition to legal conclusions."  *Id.*  Under Rule 8's pleading standard, "a formulaic recitation of the elements of a cause of action will not do," *id.* (quoting *Twombly*, 550 U.S. at 555), and "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Second, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the complaint must

4

demonstrate that the plaintiff's right to relief is more than a mere possibility. *Id.* Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, the trial judge must accept as true all of the facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *E.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The Court must determine whether the allegations give rise to a plausible right to relief, *Iqbal*, 556 U.S. at 679; however, it should "not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments,'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Thus, although the Court must accept a plaintiff's well-pleaded factual allegations as true for purposes of ruling on the motion, the complaint must nevertheless satisfy the "two-pronged" test articulated by the Supreme Court. *Iqbal*, 556 U.S. at 679.

## ARGUMENT

For the various reasons outlined herein, Plaintiffs have failed to plead a single plausible constitutional or statutory cause of action challenging the predominant method of appointing presidential electors pursuant to Article II, Section 1 of the Constitution. *See Schweikert*, 2016 WL 7046845, at *2 ("Considering existing case law, the Court need not delve too deeply into the content of Plaintiff's complaint because it does not create a 'plausible claim for relief.'" (quoting *Iqbal*, 556 U.S. at 679)). Therefore, it necessarily follows that the extraordinary declaratory and

injunctive relief sought by Plaintiffs is inapposite. Plaintiffs' Complaint is deficient as a matter of law and, as such, should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.**     **Plaintiffs' Claims Conflict with Long-Standing Electoral Practice and Are Foreclosed by Settled Law and Supreme Court Precedent**

   *A.*     *Plaintiffs' Arguments Disregard Significant Constitutional History and Long-Standing Electoral Practice*

Article II of the United States Constitution prescribes the general parameters by which the President of the United States is elected by the Electoral College. More specifically, Article II, Section 1 provides that "[e]ach State shall appoint, in such a Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in Congress." U.S. Const. art. II, § 1, cl. 2. Accordingly, in outlining the method of the President's election and the structure of the Electoral College, Article II "grants considerable discretion to the states to determine how to select electors." *Schweikert*, 2016 WL 7046845, at *2.

This constitutional commitment of exclusive appointment authority to the states was borne of compromise; indeed, the Framers considered and rejected a variety of different approaches to picking presidential electors in a uniform manner—from statewide popular vote to congressional appointment to legislative election. *See generally McPherson v. Blacker*, 146 U.S. 1, 28–33 (1892) (discussing the various proposals considered by the Constitutional Convention in connection with Article II, Section 1, as well as "contemporaneous and subsequent action under the clause"). However, the Framers ultimately "reconciled [a] contrariety of views by leaving it to the state legislatures to appoint directly by joint ballot or concurrent separate action, or through popular election by districts or by general ticket, or as otherwise might be directed."

*Id.* Consequently, "various modes of choosing the electors were pursued" after ratification,[1] yet "[n]o question was raised as to the power of the state to appoint in any mode its legislature saw fit to adopt." *Id.* at 29.

The "winner-take-all" approach to appointing electors was among the first methods utilized following ratification of the Constitution. In fact, Pennsylvania appointed its electors via a statewide "winner-take-all" system for the first presidential election. *See id.* ("Pennsylvania, by act of October 4, 1788, provided for the election of electors on a general ticket." (citation omitted)). Other states soon began to follow suit, *see id.* at 29–30, including Virginia, on the advice of Thomas Jefferson, *see Williams v. Va. State Bd. of Elections*, 288 F. Supp. 622, 626 (E.D. Va. 1968) (three judge panel).

At present, South Carolina is one of forty-eight states—and the District of Columbia— that employ a "winner-take-all" approach to selecting presidential electors. (Compl. ¶ 2); *see also Conant*, 248 F. Supp. 3d at 1024 ("According to the National Archives, '[t]he District of Columbia and 48 states have a winner-takes-all rule for the Electoral College.'" (citation omitted)); *Schweikert*, 2016 WL 7046845, at *2 ("Today, forty-eight states use a 'winner-take-all' approach."). The only states not to utilize this method are Maine and Nebraska, the legislatures of which have instead opted to select electors by congressional district, with the remaining two electors awarded to the candidate who earns a plurality of the statewide vote.[2]

---

1.    As noted by the court in *Schweikert*, 2016 WL 7046845, "[t]hroughout our nation's history, states have experimented with different procedures for selecting electors," including but not limited to: "(1) creating electoral districts, with one Elector chosen by the voters of each district; (2) selecting electors by congressional district, with the remaining two electors selected by the statewide popular vote; (3) selecting electors by congressional district, with the remaining two electors chosen by the other electors; (4) tasking the state legislature with selecting electors; and (5) selecting electors by statewide popular vote." *Id.* at *2.
2.    Notably, by way of the present action, Plaintiffs are seeking "an order permanently enjoining the use of the ['winner-take-all'] method (or other non-representational methods, such

*Schweikert*, 2016 WL 7046845, at *2 n.1.  In each of the forty-eight states that have adopted the "winner-take-all" approach to appointing electors, the "state conducts a statewide election, and the candidate who wins the plurality of votes in that state sends their entire slate of electors to the Electoral College." *Id.* at *2.

By failing to account for the fact that the "winner-take-all" approach has been used by states for over two centuries, Plaintiffs' claims immediately conflict with an important principle of constitutional interpretation—namely, that "[l]ong settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions." *N.L.R.B. v. Noel Canning*, 134 S. Ct. 2550, 2559 (2014) (emphasis omitted) (quoting *The Pocket Veto Case*, 279 U.S. 655, 689 (1929)); *see id.* at 2560 ("[T]he longstanding 'practice of the government,' can inform our determination of 'what the law is.'" (citations omitted)).  It is axiomatic that courts should "put significant weight upon historical practice."  *Id.* at 2559; *Evenwel v. Abbott*, 136 S. Ct. 1120, 1132 (2016) ("What constitutional history and our prior decisions strongly suggest, settled practice confirms.  Adopting voter-eligible apportionment as constitutional command would upset a well-functioning approach to districting that all 50 States and countless local jurisdictions have followed for decades, even centuries.") (rejecting "one-person, one-vote" challenge to redistricting plan); *Town of Greece, N.Y. v. Galloway*, 134 S. Ct. 1811, 1813 (2014) ("[A]ny test must acknowledge a practice that was accepted by the Framers and has withstood the critical scrutiny of time and political change.").  Where, as here, Plaintiffs' arguments disregard significant "contemporaneous and subsequent action under the clause [of Article II, Section 1]," *McPherson*, 146 U.S. at 28, the Court "need not delve too deeply into the content of

---

as selection by Congressional District vote) of selecting Electors in presidential elections." (Compl. ¶ 13; *see id.* ¶ 123(d), (e).)  As such, it seems that even the alternate manner of appointment used in Maine and Nebraska would not satisfy Plaintiffs' demand for "proportional" representation.

Plaintiff[s'] complaint because it does not create a 'plausible claim for relief,'" *Schweikert*, 2016 WL 7046845, at *2 (quoting *Iqbal*, 556 U.S. at 679).

B.    *Plaintiffs' Challenge Is Foreclosed by Settled Law and Supreme Court Precedent*

The Supreme Court has recognized that the historical context of this long-standing electoral practice has independent legal significance.  In *McPherson v. Blacker*, the Supreme Court noted that the question presented was "not one of policy, but of power" and emphasized that a constitutional construction that allowed states to decide whether to appoint electors on a "winner-take-all" basis had, by 1892, "prevailed too long and been too uniform to justify us in interpreting the language of the constitution as conveying any other [contrary] meaning."  146 U.S. at 36.  The Supreme Court expressly stated that the Constitution "recognizes that the people act through their representatives in the legislature, and leaves it to the legislature exclusively to define the method of effecting the object."  *Id.* at 27.  Accordingly, the Court dismissed a "non-representational" argument of the type now raised by Plaintiffs, (*see, e.g.*, Compl. ¶¶ 13, 123(d), (e)), concluding that there was no conflict with the Fourteenth and Fifteenth Amendments, *id.* at 37, because "where each citizen has an equal right to vote, the same as any other citizen has, no discrimination is made," *id.* at 40.  Thus, the Court declined to entertain an electoral challenge based on frustrated or unfulfilled expectations, explaining that the same was "no reason for holding that the power confided to the states by the constitution has ceased to exist because the operation of the system has not fully realized the hopes of those by whom it was created."  *Id.* at 36.  In doing so, the Court underscored the textual commitment to the states of the authority to appoint electors, dispensing with an argument that would have allowed the Constitution to "be wrenched from the subjects expressly embraced within it, and amended by judicial decision."  *Id.*

In addition to conflicting with much of the Court's opinion in *McPherson* and contradicting a recognized electoral practice that dates back to the first presidential election, Plaintiffs' arguments also are foreclosed by more recent case law.  In 1968, a three-judge panel of the United States District Court for the Eastern District of Virginia heard a decidedly similar challenge to the constitutionality of Virginia's "winner-take-all" method of appointing electors. *See Williams v. Va. State Bd. of Elections*, 288 F. Supp. 622 (E.D. Va. 1968) (three judge panel), *aff'd*, 393 U.S. 320 (1969) (per curiam), *reh'g denied*, 393 U.S. 1112 (1969).  The plaintiffs in *Williams* argued, *inter alia*, that Virginia's "winner-take-all," or general ticket, approach to appointing presidential electors violated the "one-person, one-vote" principle of the Equal Protection Clause of the Fourteenth Amendment.  *Id.* at 624, 626.  Correctly recognizing that the "winner-take-all" method is merely an example of the "unit rule," the panel noted that "nothing in the unit rule [is] offensive to the Constitution."  *Id.* at 627.  Thus, the court concluded that "Virginia's design for selecting presidential electors [did] not disserve the Constitution."  *Id.* at 629.

Notably, the Supreme Court subsequently affirmed the panel's decision.  *Williams v. Va. State Bd. of Elections*, 393 U.S. 320 (1969) (per curiam), *reh'g denied*, 393 U.S. 1112 (1969). Because summary affirmances "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions," *Mandel v. Bradley*, 432 U.S. 173, 176 (1977), the Supreme Court's ruling in *Williams* contradicts with the core of Plaintiffs' constitutional claims.  *See, e.g.*, *Conant*, 248 F. Supp. 3d at 1024 ("Plaintiff's arguments are foreclosed by Supreme Court precedent." (citing *Williams*, 393 U.S. 320)); *Schweikert*, 2016 WL 7046845, at *2 ("Because the *Williams* decision concerned the precise issues presented in the instant case—i.e. the constitutionality of Virginia's winner-take-all system for selecting

electors—any ruling in Plaintiff's favor would run afoul of Supreme Court precedent. . . .  Accordingly, the Court is not permitted to reach a conclusion opposite the precise issues presented in *Williams*, and Plaintiff fails to state a claim upon which this Court can grant relief.").  Virginia's "winner-take-all" method of appointing presidential electors largely mirrors South Carolina's approach.  *See* S.C. Code Ann. § 7-19-70.  Therefore, because the ruling and reasoning in *Williams* applies with equal force to the present case, this Court should dismiss Plaintiffs' Complaint for failure to state a plausible claim for relief.[3]

Plaintiffs attempt to overcome the insurmountable obstacle that the *Williams* decision poses for their case by suggesting that the Supreme Court's decision in *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam), materially altered the analytical framework that applies to "one-person, one-vote" claims.  (Compl. ¶ 54.)  Plaintiffs' arguments in this regard are without merit and, in fact, support the opposite conclusion.  First, the Supreme Court's decision in *Bush* was expressly limited to the unique circumstances then before the Court.  *See Bush*, 531 U.S. at 109 ("Our consideration is limited to the present circumstances, for the problem of equal protection in election processes generally presents many complexities.").  Second, as the Fourth Circuit Court of Appeals recently noted, summary decisions only "lose their binding force when 'doctrinal developments' illustrate that the Supreme Court no longer views a question as unsubstantial, regardless of whether the Court explicitly overrules the case."  *Bostic v. Schaefer*, 760 F.3d 352, 373 (4th Cir. 2014) (citation omitted).  Contrary to Plaintiffs' assertion, rather than undermining the validity of *Williams*, the Supreme Court in *Bush v. Gore* "reaffirmed the discretion of state legislatures to select their own method for selecting electors."  *Schweikert*, 2016 WL 7046845, at *2; *see Bush*, 531 U.S. at 104 ("[T]he state legislature's power to select the manner for

---

3.    *See infra* n.4 (identifying numerous courts that have relied on *McPherson*, *Williams*, or both, to reject various "winner-take-all" or other electoral-related challenges).

appointing electors is plenary." (citing *McPherson v. Blacker*, 146 U.S. 1, 35 (1892))). Accordingly, the Court should reject Plaintiffs' arguments as contrary to settled law and dismiss Plaintiffs' claims against Governor McMaster for failure to state a plausible claim for relief.

## II.     Plaintiffs Have Failed to Plausibly Allege that South Carolina's Method of Appointing Presidential Electors is Unconstitutional

### A.     Plaintiffs Have Failed to State a Plausible "One-Person, One-Vote" Claim, Because South Carolina's Accepted Method for Appointing Electors Equally Weighs All Votes Cast

Plaintiffs' claim that South Carolina's accepted method for appointing electors violates the "one-person, one-vote" principle of the Fourteenth Amendment is based on the conclusory assertion that "many South Carolinians have been and will continue to be denied their constitutional right to an equal vote in the presidential election." (Compl. ¶ 7.) The Court should not accept such speculative legal conclusions couched as facts. *See Takeda Pharm. N. Am., Inc.*, 707 F.3d at 455 (quoting *Cozart*, 680 F.3d at 365). Plaintiffs' conclusory "one-person, one-vote" cause of action should be dismissed for failure to state a plausible claim for relief.

Plaintiffs' Fourteenth Amendment claim speaks generally of "discarded," "cancel[ed]," and "unduly magnified" votes, (Compl. ¶ 46), yet Plaintiffs fail to acknowledge that all South Carolina voters are afforded a vote of equal weight in appointing presidential electors. *See* S.C. Code Ann. § 7-19-70. In describing the "winner-take-all" approach as a form of the unit rule, the *Williams* court noted that "it is difficult to equate the deprivations imposed by the unit rule with the denial of privileges outlawed by the one-person, one-vote doctrine or banned by Constitutional mandates of protection," principally because "the rule does not in any way denigrate the power of one citizen's ballot and heighten the influence of another's vote." 288 F. Supp. at 627; *see also McPherson*, 146 U.S. at 40 ("[E]ach citizen has an equal right to vote, the same as any other citizen has."). Again, Plaintiffs attempt to distinguish *Williams* by suggesting

that *Bush v. Gore* overruled decades of precedent by abrogating the "invidiousness" standard for "one-person, one-vote" cases.  (Compl. ¶ 54.)   However, as noted above, this suggestion is misplaced and ignores the limited circumstances addressed by the *Bush* Court.  *Cf. Harris v. Ariz. Indep. Redistricting Comm'n*, 136 S. Ct. 1301, 1307 (2016) ("We have further made clear that 'minor deviations from mathematical equality' do not, by themselves, 'make out a prima facie case of *invidious* discrimination under the Fourteenth Amendment so as to require justification by the State.'" (emphasis added)).   As such, the panel's decision in *Williams*, as summarily affirmed by the Supreme Court, remains valid, binding law.[4]   *See Conant*, 248 F. Supp. 3d at 1025 ("*Williams* is still good law and Plaintiff offers no basis for distinguishing it."). Therefore, Governor McMaster respectfully submits that this Court must follow *Williams* and reject Plaintiffs' "one-person, one-vote" challenge.[5]

---

4.      As recently noted by the court in *Conant*, the panel's decision in *Williams*, as affirmed by the Supreme Court, "continues to be cited by courts rejecting similar challenges to state presidential elector selection laws."   248 F. Supp. 3d at 1024 (collecting cases) (citing *Schweikert*, 2016 WL 7046845, at \*2; *New v. Pelosi*, No. 08 Civ. 9055 (AKH), 2008 WL 4755414, at \*2 (S.D.N.Y. 2008)), *aff'd*, 374 Fed. App'x 158 (2d Cir. 2010); *Hitson v. Baggett*, 446 F. Supp. 674, 676 (M.D. Ala.), *aff'd*, 580 F.2d 1051 (5th Cir. 1978)); *see also Williams v. North Carolina*, No. 3:17-CV-265-MOC-DCK, 2017 WL 4936429, at \*4–5 (W.D.N.C. Oct. 2, 2017) (identifying and explaining thirteen cases cited by the defendant in response to a similar "winner-take-all" challenge and concluding that "[t]he opinions in these cases, particularly the Supreme Court's opinion in [*McPherson v.*] *Blacker* and summary affirmation of *Williams*, apply herein"), *report and recommendation adopted*, No. 317CV00265MOCDCK, 2017 WL 4935858 (W.D.N.C. Oct. 31, 2017), *aff'd sub nom. Williams v. N.C. State Bd. of Elections*, No. 17-2367, 2018 WL 1876090 (4th Cir. Apr. 19, 2018).
5.      Although Plaintiffs affirmatively state that the present action "is not a challenge to the Electoral College," (Compl. ¶ 12), given the nature of their arguments, such a disclaimer attempts to draw a distinction without a difference.   *See New*, 2008 WL 4755414, at \*2 ("The Supreme Court has consistently declined to extend the principle of 'one person, one vote' to the electoral college." (citing *Gray v. Sanders*, 372 U.S. 368 (1963))), *aff'd*, 374 F. App'x 158 (2d Cir. 2010).

B.    *Plaintiffs Have Failed to State a Cognizable Claim Under the First and Fourteenth Amendments*

By way of their second cause of action, Plaintiffs contend that the predominant method of appointing presidential electors "deprives Plaintiffs of their First and Fourteenth Amendment associational rights based solely on Plaintiffs' political association and expression of political views at the ballot box." (Compl. ¶ 57.) Aside from Plaintiffs' vague and conclusory assertion that the "winner-take-all" method "discards Plaintiffs' votes for President, limiting Plaintiffs' ability to express their political preference," (Compl. ¶ 58), Plaintiffs' First Amendment claim seems to take issue with the effectiveness of their associational activities and not with the ability to exercise their rights. Accordingly, Plaintiffs' cause of action for violation of the First and Fourteenth Amendments should be dismissed for failure to state a cognizable claim for relief.

"It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986) (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958)). "The freedom of association protected by the First and Fourteenth Amendments includes partisan political organization." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 357 (1976) (plurality opinion); *Buckley v. Valeo*, 424 U.S. 1, 15 (1976)). As compared to the Equal Protection Clause of the Fourteenth Amendment, which "ensures equal weighing of votes, or . . . equal effectiveness of votes," "[t]he First Amendment . . . protects the right to cast an effective vote by prohibiting restrictions on ballot access that impair the ability of citizens to express their political preferences, or that limit the opportunity for citizens to unite in support of the candidate of their choice." *Martin*, 980 F.2d at 959–60.

Here, Plaintiffs generally assert that South Carolina's "winner-take-all" approach for appointing presidential electors violates and "places a severe burden on Plaintiffs' rights to associate and to *effectively* express their political preference through voting that is not outweighed by any legitimate state interest." (Compl. ¶ 115 (emphasis added).) However, Plaintiffs have failed to specifically allege or identify any restrictions on ballot access that have impaired their ability to express their political preferences or limited their opportunity to unite in support of the candidate of their choice. Indeed, Plaintiffs' arguments reveal the contrary— Plaintiffs affirmatively state that they have availed themselves of the opportunity to support Democratic candidates for president but have been unsatisfied with the electoral outcomes. (*See* Compl. ¶¶ 5, 23–28.)

South Carolina's "winner-take-all" method of appointing presidential electors does not represent a direct impediment to association. Rather, Plaintiffs may "vote for the candidate of their choice[] and associate together in support of their chosen candidate." *Id.* at 960. Thus, while Plaintiffs may not have realized their stated partisan political goals, Plaintiffs are not prohibited from participating, individually or collectively, in presidential elections. "The First Amendment guarantees the right to participate in the political process. It does not guarantee political success." *Id.* Consequently, because South Carolina's "winner-take-all" method of selecting presidential electors does not infringe upon Plaintiffs' First Amendment rights, the Court should dismiss Plaintiffs' second cause of action for failure to state a plausible claim for relief.

**III.    Plaintiffs Have Failed to State a Plausible Claim that South Carolina's Use of the Predominant Method of Appointing Presidential Electors Violates Section 2 of the Voting Rights Act**

Finally, Plaintiffs ask this Court to declare that South Carolina's method of appointing presidential electors "dilutes the voting strength of African-American voters in South Carolina in violation of Section 2 of the Voting Rights Act."  (Compl. ¶ 123(a).)   More particularly, Plaintiffs allege that the "winner-take-all" approach to appointing electors "results in the denial or abridgment of the right of African-American citizens in South Carolina to vote on account of race or color, (Compl. ¶ 118), and that "[u]nder the totality of the circumstances, the ["winner-take-all"] system . . . results in less opportunity for African-American citizens in South Carolina than their white counterparts 'to participate in the political process and to elect representatives of their choice,'" (Compl. ¶ 119 (quoting 52 U.S.C. § 10301(b))).   Plaintiffs further assert that South Carolina's method of appointing electors "has a direct causal connection to the denial or abridgement of the right of African-American citizens in South Carolina to vote on account of race or color."  (Compl. ¶ 120.)   In short, Plaintiffs' argument, however creative, is unhinged from the purpose and text of the Voting Rights Act and untethered from Plaintiffs' own admissions.   Therefore, for the reasons briefly outlined below, the Court should dismiss Plaintiffs' Voting Rights Act claim.

In the instant case, Plaintiffs' own allegations—and the broader theory of Plaintiffs' case—demonstrate that Plaintiffs have not and cannot plausibly allege a claim pursuant to Section 2 of the Voting Rights Act.  In fact, Plaintiffs' Complaint makes clear that the cited "abridgement" of the right to vote is not "on account of" racial identification but rather is the result of their political affiliation.  Throughout their Complaint, Plaintiffs primarily point to their partisan affiliation as the basis for the cited constitutional and statutory violations.  *Cf. Bush v.*

*Vera*, 517 U.S. 952, 968 (1996) ("If district lines merely correlate with race because they are drawn on the basis of political affiliation, which correlates with race, there is no racial classification to justify . . . ."). Aside from the fact that only three of the named Plaintiffs are identified in the Complaint as African-American, (Compl. ¶¶ 23, 25, 26), Plaintiffs principally allege that "because the Individual Plaintiffs have voted for, and will vote for, the democratic candidate for President in South Carolina, they have been, and will be again, deprived of the right to have their votes counted equally and meaningfully toward the election of the President," (Compl. ¶ 22). Thus, Plaintiffs' Complaint is premised not on racial discrimination but on their oft-repeated claim that they have suffered as a direct result of their stated preference for voting for Democratic candidates.

As noted by the court in *League of United Latin American Citizens, Council No. 4434 v. Clements*, the Supreme Court has "established a clean divide between actionable vote dilution and 'political defeat at the polls.'" 999 F.2d 831, 850 (5th Cir. 1993) (en banc) (citing *Whitcomb v. Chavis*, 403 U.S. 124 (1971)). "Absent evidence that minorities have been excluded from the political process, a 'lack of success at the polls' is not sufficient to trigger judicial intervention." *Id.* at 853–54. Accordingly, because it lacks facial plausibility, Plaintiffs' Voting Rights Act cause of action should be dismissed, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

## CONCLUSION

In sum, Plaintiffs' Complaint sets forth a trilogy of manufactured constitutional and statutory causes of action, each of which fails to rise to the level of articulating a plausible claim for relief. Therefore, for the foregoing reasons, Governor McMaster respectfully requests that

the Court dismiss Plaintiffs' Complaint, with prejudice, pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.

Respectfully submitted,

/s/Thomas A. Limehouse, Jr.
Karl S. ("Butch") Bowers, Jr. (Fed. Bar No. 7716)
Bowers Law Office
Post Office Box 50549
Columbia, South Carolina  29250
(803) 753-1099 (phone)
(803) 250-3985 (fax)
butch@butchbowers.com


Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
Office of the Governor
South Carolina State House
1100 Gervais Street
Columbia, South Carolina  29201
(803) 734-6023 (phone)
(803) 734-5167 (fax)
tlimehouse@governor.sc.gov

*Counsel for Defendant Henry McMaster, in his official capacity as Governor of the State of South Carolina*

May 3, 2018
Columbia, South Carolina